# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PALM BEACH DIVISION

CASE NO.:

MARISABEL JIMINEZ,

    Plaintiff,

vs.

E-Z WELD GROUP, LLC,
A Florida Limited Liability
Company,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, MARISABEL JIMINEZ, by and through her undersigned attorney, alleges the following against Defendant, E-Z WELD GROUP, LLC, a Florida Limited Liability Company, and states, to wit:

## INTRODUCTION

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.), and 42 U.S.C. §§ 1981 and 1985(3), alleging race and sex discrimination in employment and retaliation. The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights guaranteed by federal law involving discrimination in employment.

## JURISDICTION AND VENUE

3. This is an action which arises under Title VII of the Civil Rights Act of 1967, as amended, (42 U.S.C. 2000e seq.).

4. Jurisdiction is founded on 42 U.S.C. § § 2000e-5(f)(3), and 28 U.S.C. § 1331 (Federal Question).

5. Venue is proper in the Southern District of Florida pursuant to 42 U.S.C. § § 2000e-5(f)(3), Title VII "Venue"; and 28 U.S.C. § § 1391(b) and ( c) (Venue generally).

### EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6. Plaintiff, MARISABEL JIMINEZ, timely filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendant, E-Z WELD GROUP, LLC.  Plaintiff, MARISABEL JIMINEZ, received a Notice of the Right to Sue from EEOC within ninety (90) days of the filing of this Complaint.  A copy of the each Right to Sue Notice Letter from the EEOC is attached as Exhibit "1".

### PARTIES

7. At all times material to this action, Plaintiff, MARISABEL JIMINEZ, is/was a resident(s) of Palm Beach County, Florida, is over the age of 18, and is otherwise sui juris.

8. At all relevant times, Defendant, E-Z WELD GROUP, LLC, is a Florida limited liability company, located in Palm Beach County, Florida.

9. Plaintiff has satisfied all conditions precedent prior to bringing an action under Title VII of the Civil Rights Act of 1964, as amended.

### FACTUAL ALLEGATIONS

9. At all relevant times, Defendant, E-Z WELD GROUP, LLC, [Hereinafter, " E-Z WELD"], was/is engaged in an industry affecting commerce.

10. At all relevant times, Defendant, E-Z WELD, employed Plaintiff, MARISABEL JIMINEZ, within the meaning of 42 U.S.C. § § 2000e-(b).

11.     Defendant, E-Z WELD, engaged in policies and practices which are/were willfully, intentionally and unlawfully discriminatory against Plaintiff on the basis of her race (Black) and her national origin/ancestry (Puerto Rican-American).

12      Plaintiff, JIMINEZ, sues Defendant, E-Z WELD, and re-alleges paragraphs 1 through 11, as if fully set forth herein and are incorporated by this reference.

13.     Plaintiff, JIMINEZ, is a Black female of Puerto Rican-African descent and ancestry, protected under Title VII (42 U.S.C. § § 2000e-b).

14.     Defendant, E-Z WELD, is an employer within the meaning of Title VII (42 U.S.C. § § 2000e-b).  Moreover, at all times material hereto, Plaintiff, JIMINEZ, is/was employed by Defendant, E-Z WELD, as a full-time Administrative Assistant/Accounts Payable Clerk. Plaintiff's normal work hours at E-Z WELD, at times, varied from week to week.

15.     Plaintiff's work duties as an Administrative Assistant/Accounts Payable Clerk involved working closely with E-Z WELD's Operations Manager, among other things.  JIMINEZ, at all times material, was qualified for her position as an Administrative Assistant/Accounts Payable Clerk, and was performing her job satisfactorily.

16.      Typically, Plaintiff's work hours began at 8:00 a.m.  Her office was situated in E-Z WELD's Administrative Department which was indoors.  E-Z WELD'S production and warehouse workers began their shifts at 6:00 a.m., and/or 7:00 a.m.  Because Plaintiff arrived to work later than E-Z WELD's production and warehouse workers did, she frequently saw that there was no open available parking spaces that were close to her office's area.   Production and warehouse workers occupied all of the available parking space inside the gate on either side of the Administrative Building.  The only available spaces to park were the furthest from the Administrative Building.   Production and warehouse workers and staff could see Plaintiff's

vehicle pull in as she arrived to work. Once Plaintiff parked and exited her vehicle, production and warehouse workers and staff were able to see her walk passed them while she was heading to her office. Whenever Plaintiff passed the maintenance building to report to work, leave and return from lunch, or leave for the day, Plaintiff would hear loud whistling and loud comments about her (Plaintiff's) derriere (butt). Plaintiff would hear comments like, "Damn she's fine!", being uttered. This behavior on the part of E-Z WELD's production and warehouse (maintenance) workers was continuous throughout Plaintiff's employment with Defendant.

17. On several occasions Plaintiff observed one of E-Z WELD's warehouse employees, by the name of Greg Ponder, stare at Plaintiff with his eyes bulging as Plaintiff was passing by him. Furthermore, Mr. Ponder would grab his crotch as he stared at Plaintiff's rear end. Plaintiff further heard him blurt out to other male employees, "Damn she gotta a big ass!" Plaintiff dealt with these types of behavior daily, usually anytime Plaintiff walked by or through the (production and) warehouse area.

18. On other occasions Mr. Ponder would stop whatever he was doing to watch Plaintiff and he would make inappropriate comments, of a sexual nature, about Plaintiff's body, primarily about her butt: "She got a nice fat ass! When are you going to let me tap that ass?"

19. On another occasion, Plaintiff was approached by German Vargas, a maintenance worker at E-Z Weld, while Plaintiff was walking to her car. Mr. Vargas asked Plaintiff if she was okay. Plaintiff replied that she was catching a cold. Mr. Vargas replied, "Oh, you are just sick from a lack of sex." At the end of the business day, Plaintiff went to E-Z WELD's Human Resources Office and reported to Beverly Banks, the Human Resources Manager. Plaintiff explained to Ms. Banks that Plaintiff needed advice on how to handle this situation and that Plaintiff needed E-Z WELD's management to intervene because Plaintiff felt uncomfortable about how she was being

treated. Ms. Banks quickly became angered and spoke to Plaintiff in an elevated tone of voice. Plaintiff also spoke with her supervisor/manager, David Jaco, about a meeting Plaintiff had with Human Resources and Plaintiff informed Mr. Jaco that she (Plaintiff) was uncomfortable about Human Resources' attitude towards Plaintiff's reports of the incidents to Human Resources. Mr. Jaco met with Human Resources and Plaintiff. Because of David Jaco's intervention, Human Resources promised to give Plaintiff a key to a back gate that she could access in order for her to park closer to her office and be able to avoid walking by and through the area where production and maintenance workers were. Plaintiff made repeated requests to Human Resources for the key to the back gate, but Human Resources never provided Plaintiff with the key to the back gate as promised in the meeting with David Jaco. Shortly thereafter, Plaintiff received a written performance warning for Human Resources. Prior to that, Plaintiff had not been warned or counseled by her supervisor/manager, Mr. Jaco, or anyone in management during for the entire time that Plaintiff worked for E-Z WELD.

20. In March 2018, Plaintiff overheard a conversation between two co-workers, (Connie Presinger and Martha Campos), discussing and laughing about the details of Plaintiff's sexual harassment complaint to Human Resources. Plaintiff felt upset because such information should have been kept confidential by Human Resources.

21. At the end of March 2018, and beginning of April 2018, Plaintiff was sexually harassed by "Cleveland LNU", who was a maintenance worker. As Plaintiff was walking out of the break room, "Cleveland LNU" held the door open for Plaintiff and motioned for Plaintiff to come through the door as Plaintiff did. While exiting the door, "Cleveland LNU" was squeezing himself (against) Plaintiff, and he rubbed his private parts against Plaintiff's buttocks while at the same time making a groan sound. Plaintiff could feel that "Cleveland's" penis was fully erect,

since he rubbed it against Plaintiff's buttocks. Plaintiff screamed at him out loud, not to do that. Mr. Jaco, Plaintiff's supervisor/manager, overheard Plaintiff and came out to see what happened. Mr. Jaco called Plaintiff into his office where she (Plaintiff) explained to Mr. Jaco what had just happened. Moreover, Plaintiff told Mr. Jaco that she (Plaintiff) did not feel comfortable going to Human Resources because Human Resources had done nothing to stop the prior sexual harassment incidents that she (Plaintiff) had complained about in the past. Plaintiff also told Mr. Jaco that she felt that she was being retaliated by Human Resources because Human Resources had done nothing to protect Plaintiff from sexual harassment.

22. During that meeting, Mr. Jaco offered Plaintiff a full-time and permanent position, but stated that he needed to get Human Resources' approval first. Mr. Jaco also reinforced to Plaintiff that her work performance was excellent and that Plaintiff was not in danger of losing her job. Finally, Mr. Jaco allowed Plaintiff to leave work early that day.

23. Plaintiff also received sexually-charged and explicit text messages on her personal cell phone from Patrick Trevino. Alexis Badell was the Operations Manager for whom Mr. Trevino worked. Mr. Trevino, had, on several occasions, come to Plaintiff's desk to hang out, waiting for Plaintiff to be alone in her office and once she was alone, would harass Plaintiff. Mr. Trevino would watch to see when Plaintiff was leaving and would walk out behind her, sexually harassing Plaintiff. Furthermore, on several occasions, Mr. Trevino grabbed Plaintiff and touched Plaintiff's breasts and butt. Because Plaintiff's prior complaints to Human Resources had fallen on deaf ears, Plaintiff tried to handle the situation herself, befriending Mr. Trevino (the Harasser) to see if he would stop. It did not work; Mr. Trevino continued. So Plaintiff changed her phone number. Suddenly, Mr. Trevino sent requests to Plaintiff's Facebook page. Plaintiff became very anxious. Plaintiff would shake while sitting at her desk sometimes and

would sweat profusely. In fact, on several occasions, Plaintiff had a break-down and would go to the bathroom to cry.

24. On one occasion, Plaintiff was working on a project with Mr. Leo Hernandez, who is the Purchasing Manager at E-Z WELD. Suddenly, Plaintiff received a text message, via Facebook Messenger, from Mr. Trevino, which text message was embedded with a picture of a penis (presumably, Mr. Trevino's). The lewd and offensive nature of the text message with the attached photographic image caused Plaintiff to break down, crying from the feelings of helplessness and hopelessness.

25. In order to prevent further sexual harassment, Plaintiff would wear her uniform shirt untucked, which she did to cover her butt. Plaintiff would avoid eating lunch on the premises. Plaintiff was asked to work overtime, but Plaintiff declined for fear that Plaintiff would be working alone in the office with nobody there to defend Plaintiff.

26. Plaintiff's sought the help of Alexis Badell, the operation manager for Mr. Trevino, by emailing from her private email about the sexual harassment that Plaintiff was being subjected to at E-Z WELD.

27. In the month of May 2018, Defendant E-Z WELD reduced Plaintiff's work hours from 40 to 32.50 hours, claiming that it was due to a decline in sales. In July 2018, Plaintiff's supervisor/manager, David Jaco, informed her that she would be taken off the schedule, meaning she was being "fired". Plaintiff asked David if she could remain on the schedule until she found new employment.

28. In July 2018, Defendant, E-Z WELD, gave Abby Roman time off and agreed to allow her to make that time off later on, so that she Ms. Roman would not lose any income due to her absence. However, when Plaintiff asked her supervisor/manager (Mr. Jaco) for the same

opportunity and treatment, Mr. Jaco, who seemingly agreed, responded that Human Resources needed first to approve Plaintiff's request. Plaintiff then asked Human Resources, which denied Plaintiff the same opportunity that had been given to Ms. Roman. Because of the denial of the Plaintiff's request, Plaintiff was visible upset and went to her office to cry. Shortly afterwards, Plaintiff was summoned to meet with the CFO Richard Gutske at the Human Resources' office, at which time she was terminated from her employment, effective immediately. Plaintiff was given a Release to sign and Plaintiff declined to sign it.

29. Plaintiff had been an Administrative Assistant/Accounts Payable Clerk with Defendant for a few months. Plaintiff is a Black female of Puerto Rican ancestry/descent, working in an environment at E-Z WELD that is predominantly male and White/Hispanic. Plaintiff had to walk through an area where most of the males co-workers routinely made comments about Plaintiff's derriere, which made Plaintiff to feel uncomfortable. Plaintiff's complained to Human Resources and to management that she was feeling uncomfortable by her male co-workers' comments and behaviors. Human Resources and management did nothing about it. In fact, one day, one of her male co-workers touched Plaintiff's buttocks while she was walking and passing them.

30. Plaintiff made repeated complaints to Defendant E-Z WELD's Human Resources Department about the hostile work environment created by her male co-workers, particularly those in the production and warehouse parts of E-Z WELD's business, who Plaintiff regularly encountered when she arrived and left work.

31. Plaintiff started at E-Z WELD as a temporary employee in November 2017, as part of its

Administrative Team.   Because of Plaintiff's satisfactory performance, Defendant offered Plaintiff a position as an "Accounts/Payable Clerk", working with and reporting directly to the Defendant's controller, David Jaco.

32. Defendant engaged in policies and practices by and through the management of its company, which evidence a pattern and practice of willful and intentional discrimination against the Plaintiff on the basis of her race and sex and in retaliation of her protected conduct.  These policies and practices include, but are not limited to, the following:

   a. Verbally harassing Plaintiff and other similarly situated, in an effort to secure Plaintiff's resignation and/or termination;

   b. Creating policies whereby employees who voiced concerns regarding discriminatory practices and/or hostile work environment were subject to greater scrutiny;

   c. Creating a hostile working environment by intimidating, threatening and coercing Plaintiff on the basis of her sex, race and protected speech.

33. The alleged reasons for Plaintiff's termination were false and therefore constitute pretext for terminating Plaintiff's employment.

34. As direct result of these actions, Plaintiff has been caused to suffer loss of income, increased levels of stress, emotional and mental suffering.

35. Defendant's actions were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE , COLOR AND NATIONAL ORIGIN DISCRIMINATION

36. Plaintiff sues Defendant and re-alleges Paragraphs 1 through 35, as if fully incorporated therein by this reference.

37. This action is based upon Race, Color and National Origin under Title VII.

38.  E-Z WELD has fifteen (15) or more employees for each working day in each of the

twenty or more weeks in calendar years 2016, 2017, 2018, and 2019, respectively.

39. Plaintiff is Black, of Puerto Rican national origin and descent and is a member of a protected group.

40. E-Z WELD has discriminated against Plaintiff on the basis of her race, national origin and sex in matters of discipline, subjective decision-making policies, termination and other terms and conditions of employment, which have resulted in disparate impact and treatment of Plaintiff, including, but not limited to, engaging in the following conduct:

i) telling Plaintiff that because she (Plaintiff) was of Puerto Rican descent, she should understand the ways of Spanish men, following her complaints about being the subject of remarks, comments and sexual gestures made towards her;

ii) being told by management that she should be able to handle herself and not get upset by her being stereotyped as a Puerto Rican woman with a shapely rear end because Puerto Rican women are known for having very shapely rear-ends;

iii) being stereotyped that, as a Puerto Rican female, she was naturally flirtatious and sexually-charged like all Puerto Rican women;

iv) being told that the remarks, comments and sexual gestures made towards her should not be offensive since she was an attractive women;

v) even after repeatedly voicing how uncomfortable she felt with the remarks, comments and sexual gestures that were made towards her, she was encouraged by management to laugh it off because she was Puerto Rican and that she was taking things too seriously and reading too much into things;

vi) was repeatedly told and made to feel that, as a Puerto Rican, she was inferior, that everyone knew that Puerto Ricans do not speak proper Spanish and that Puerto Ricans are a lower class because they are from the from the Caribbean and are more African in descent, compared to South Americans, who are more of White, European descent.

41. E-Z WELD's actions and omissions discriminated against Plaintiff on the basis of her race and sex in violation of the Title VII and the Civil Rights Act of 1991, by instituting and conducting a systematic pattern and practice of sex and race discrimination in an effort to create a hostile working environment and resulting in Plaintiff's termination.

42. Plaintiff performed her job satisfactorily.

43.     E-Z WELD treated similar-situated employees outside of the Plaintiff's protected class more favorably.

44.     E-Z WELD's conduct violated Title VII in that the Plaintiff was discriminated against on the basis of her Race, Color and/or National Origin.

45.     As a the direct and proximate result of the wrongful action of E-Z WELD's policies and practices regarding employment, Plaintiff was caused to suffer lost wages, loss of future earning capacity, loss of benefits in general, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly to suffer such losses in the future.

46.     Because of such conduct, Plaintiff suffered severe emotional distress, embarrassment and humiliation.

47.     Defendant's actions were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

   **WHEREFORE**, Plaintiff, MARISABEL JIMINEZ, prays that this Court:

   a.   Advance this case on the docket;

   b.   Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

   c.   Enjoin Defendant, its employees and supervisory staff from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their race, color or national origin, which rights are secured by Title VII.

   d.   Order Defendant to remedy the racial discrimination against Plaintiff by: (1) Paying appropriate back pay; (2) Paying prejudgment interest; (3) Paying front pay in lieu of reinstatement; and (4) Providing any other relief that this Court deems appropriate.

  e. Enter a Judgment against Defendant for Compensatory Damages;

  f. Enter a Judgment against Defendant for punitive damages; and

  g. Enter a Judgment against Defendant for costs, and a reasonable award of attorneys' fees pursuant to Title VII.

## COUNT II
## § 1981 RACE DISCRIMINATION

48. Plaintiff re-alleges and incorporates by reference paragraph 1 through 35, as if fully set forth herein.

49. This is a claim to redress unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981.

50. E-Z WELD has discriminated against Plaintiff on the basis of her race in matters of discipline, subjective decision making policies, termination and other terms and condition of employment which have resulted in disparate impact and treatment of Plaintiff.

51. E-Z WELD's actions discriminated against Plaintiff on the basis of her race in violation of the Civil Right Act of 1981, by instituting and conducting a systematic pattern and practice of race discrimination in an effort to create a hostile working environment and resulting in Plaintiff's termination.  Examples of E-Z WELD's discriminatory conduct include, but not are not limited to, the following:

  i). telling Plaintiff that because she (Plaintiff) was of Puerto Rican descent, she should understand the ways of Spanish men, following her complaints about being the subject of remarks, comments and sexual gestures made towards her;

  ii) being told by management that she should be able to handle herself and not get upset by her being stereotyped as a Puerto Rican woman with a shapely rear end because Puerto Rican women are known for having very shapely rear-ends;

    iii)    being stereotyped that, as a Puerto Rican female, she was naturally flirtatious and sexually-charged like all Puerto Rican women;

    iv)    being told that the remarks, comments and sexual gestures made towards her should not be offensive since she was an attractive women;

    v)    even after repeatedly voicing how uncomfortable she felt with the remarks, comments and sexual gestures that were made towards her, she was encouraged by management to laugh it off because she was Puerto Rican and that she was taking things too seriously and reading too much into things;

    vi)    was repeatedly told and made to feel that, as a Puerto Rican, she was inferior, that everyone knew that Puerto Ricans do not speak proper Spanish and that Puerto Ricans are a lower class because they are from the from the Caribbean and are more African in descent, compared to South Americans, who are more of White, European descent.

52. As the direct and proximate result of the wrongful actions of E-Z WELD, Plaintiff was caused to suffer lost wages, loss of future earning capacity, loss of benefits in general, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These loses are continuing and the Plaintiff will continue to suffer such losses in the future.

53. Because of such conduct, Plaintiff suffered severe emotional distress, embarrassment and humiliation.

54. Defendant's action were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

    **WHEREFORE**, Plaintiff, MARISABEL JIMINEZ, prays that this Court:

    a.    Advance this case on the docket;

    b.    Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

    c.      Enjoin Defendant, its employees and supervisory staff from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their race, color or national origin, which rights are secured by Title VII.

    d.      Order Defendant to remedy the racial discrimination against Plaintiff by: (1) Paying appropriate back pay;  (2)  Paying prejudgment interest; (3) Paying front pay in lieu of reinstatement; and (4)  Providing any other relief that this Court deems appropriate.

    e.      Enter a Judgment against Defendant for compensatory damages;

    f.      Enter a Judgment against Defendant for punitive damages; and

    g.      Enter a Judgment against Defendant for costs, and a reasonable award of attorneys' fees pursuant to Title VII.

## COUNT III
## TITLE VII AND SECTION 1981
## HOSTILE WORK ENVIRONMENT

55. Plaintiff sues Defendant and re-alleges Paragraph 1 through 35, as if fully incorporated therein by this reference.

56. Plaintiff was subjected to a hostile work environment based on sex as set out above.

57. The harassment was unwelcome based on sex and were severe and pervasive so that it affected the terms and conditions of the Plaintiff's employment and defendant is liable for such harassment.  The harassment was continuing in nature.

58. Plaintiff and others objected to and complained about the harassing conduct; however, Defendant failed to take prompt, effective remedial action.

59. Defendant did not appropriately handle the complaints of harassments from the Plaintiff and others.

60. The Plaintiff found that sexually hostile work environment to be humiliating, offensive, unfair and in violation of her rights under Title VII and under Section 1981 and she suffered mental suffering and anguish as a direct result.

61. Defendant made no reasonable effort to utilize, publicize or enforce an effective company anti-harassment policy.

62. Defendant is directly liable for the sexual harassment and authorized and/or ratified said conduct. Defendant failed to take prompt effective remedial action upon notice of the sexual harassment of the Plaintiff.

63. Defendant's actions were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

64. Because of such conduct, Plaintiff suffered severe emotional distress, embarrassment and humiliation.

   **WHEREFORE**, Plaintiff, MARISABEL JIMINEZ, prays that this Court:

   a. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

   b. Enjoin Defendant, its employees and supervisory staff from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their race, color or national origin, which rights are secured by Title VII.

   c. Order Defendant to remedy the racial discrimination against Plaintiff by: (1)

Paying appropriate back pay; (2) Paying prejudgment interest; (3) Paying front pay in lieu of reinstatement; and (4) Providing any other relief that this Court deems appropriate.

      d.      Enter a Judgment against the Defendant for compensatory damages;

      e.      Enter a Judgment against the Defendant for punitive damages; and

      f.      Enter a Judgment against the Defendant for costs, and a reasonable award of attorneys' fees pursuant to Title VII.

**COUNT IV**
**RETALIATION CLAIM**

65.    Plaintiff sues Defendant and re-alleges Paragraph 1 through 35, as if fully incorporated therein by this reference.

66.    Plaintiff filed a Complaint with Defendant, E-Z WELD, regarding concerns of the discriminatory/sexual harassment practices engaged in by Defendant's production and maintenance workers and Plaintiff openly opposed the discriminatory actions and treatment by Defendant.

67.    As a direct result of Plaintiff's complaints to management of E-Z WELD, Defendant management did nothing to stop the harassment directly or indirectly, in retaliation for her open opposition and expression of concerns regarding possible sexual and discriminatory practices by E-Z WELD.

68.    As a direct result of Plaintiffs' complaints and opposition to discrimination, Plaintiff was disciplined, was denied time off, her work hours reduced and ultimately terminated from her employment with E-Z WELD.

69. Plaintiff complained of a hostile work environment because of constant sexual harassment by the her co-workers, mainly the maintenance workers. Because of the Plaintiff's repeated complaint about the harassment, Plaintiff was retaliated by the Defendant.

70. Defendant retaliated against Plaintiff by reducing Plaintiff's work schedule from 40 hours per week to 32.50 hours per week.

71. Defendant's Human Resources Department (&) its management retaliated against Plaintiff by refusing to give Plaintiff the key to the back gate for Plaintiff to park her car so that Plaintiff could avoid walking in the area where the production and maintenance workers were working.

72. Defendant, through its management, retaliated against Plaintiff by firing her (Plaintiff) because of Plaintiff's complaining about sexual harassment by co-workers and the hostile work environment at E-Z WELD.

73. E-Z WELD violated Title VII in that E-Z WELD retaliated against Plaintiff for exercising her rights afforded her under Title VII.

74. Defendant E-Z WELD violated Plaintiff's rights to the privilege of employment in violation of Title VII.

75. Defendant E-Z WELD retaliated against Plaintiff for the exercise of federally protected rights by her which prohibited and discriminatory pursuant to Title VII and 1981.

76. As the direct and proximate result of the wrongful actions of E-Z WELD, Plaintiff was caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and

indirectly related expenses.  These losses are continuing and Plaintiff will continue to suffer such losses in the future.

77. Defendant's actions were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

78. Because of such conduct, the Plaintiff suffered severe emotional distress, embarrassment and humiliation.

**WHEREFORE**, Plaintiff, MARISABEL JIMINEZ, demands judgment against the Defendant, E-Z WELD, for compensatory damages, in an amount not in excess of $300,000.00, in lieu of reinstatement, and demand of statutory interest, liquidated damages pursuant to 29 U.S.C.§626(b) costs, reasonable attorney's fees, and any other award the Court deems proper and fit.

## DEMAND FOR TRIAL BY JURY

Plaintiff, MARISABEL JIMINEZ, demands a trial by jury in all matters so triable.

Respectfully submitted on this ___ day of __February__, 2020.

        **JAMES JEAN-FRANCOIS, P.A.**
        Duty Free Americas, Suite 211
        6100 Hollywood Boulevard
        Hollywood, FL 33024
        Phone: (954) 987-8832
        Fax:   (954) 987-2622
        E-mail address:
        (P)  *jamesjeanfrancoisesq@hotmail.com*
        (S)  *jjonlaw@hotmail.com*

        *James Jean-Francois /s/*
By: _____
        **JAMES JEAN-FRANCOIS, ESQ**.
        Fla. Bar # 0495115
        Attorney for Plaintiff